*Avery, J.
The charge of the court gives a construction to the deed, by which the north line,.that is directed to be run ninety-three rods, is extended to 149 rods and a fraction. The south line of the tract is extended in a still greater proportion; and the tract embraced, called forty acres, is made to contain sixty-four acres.
Was this construction right?—is the question. If followed by the jury, would it convey to the plaintiff no more land, than, under a just construction of his deed, belonged to him ? This, according to the evidence, is a sheriff’s deed. He is a public officer, and all his proceedings, under an execution, are regulated by public law. When he levies upon a tract of land, he is obliged to cause an appraisement of it, under oath, to be made in this manner; fixing, as near as practicable, the true value of the tract. He can not pass the title to this land, unless the bid at public sale amounts to a given proportion of that appraised value. That he should be as exact as practicable then in his quantity, when, as here, there is nothing throughout the tract to show any difference in the quality of the land, is an obvious duty, and therefore may be fairly enough said to be his intention.
It will not be presumed, that, in selling a debtor’s land upon execution, he can be indifferent to the wrong of selling more than sixty acres for forty. He must have meant, therefore, to levy upon forty acres, to appraise forty, and to sell the larger quantity. It is be borne in mind, at the same time, that there is' no proof in the case, that this description in the levy and deed was the result of actual survey, or that any of the lines were run upon the ground till after the sale. The description of the tract itself seems to look to a fixed quantity to be struck off in future, rather than to any survey already made; for, by its terms alone, without ever going upon the ground, the quantity can be determined without *20 mathematical exactness. Tho starting point is the only one fixed with entire certainty—except of course and distance. All tho lines, after the first, run to cardinal points of tho compass; and while the linos and angles, etc., are so exactly described that a surveyor can tell to a fraction the quantity, even ^Fugate’s corner so much relied upon to fix other corners and lines, has not, if you take the language of the description, a fixed location itself. It is to be found by running about twenty-seven rods west of a previous corner. This uncertainty, it is true, would not be permitted to disturb an actual boundary or monument, in ordinary cases, and is noticed here, only as it may show the intention.
Thus, when it is remembered who is the grantor in this deed, whence he derives his right to sell the land in controversy, and by what directions he is to be guided, there is strong reason for believing that the description was so drawn as to make sure of a given quantity, and was not drawn after any actual survey.
But wo do not admit that any principle of established law would be violated, if we allow the parol proof of certain facts rejected upon the trial. Tho proceedings of the sheriff, at the time of the levy, and also preparatory to the levy, wore, as we think, the proper subjects of proof; ’and we think it was competent to show that the records were examined; that a surveyor was called upon to ascertain what length of lines would be necessary to embrace the specified quantity of land; and, when afterward the lines wore run upon tho ground, that, by pursuing one construction, the tract would be much larger than the designated quantity, and by following others, would approach more nearly to it; that tho Fugate tract was uninclosed, and though there was a fixed corner, yet it was not conspicuous; that the sheriff went upon the land before the levy, and to show, also, that no actual survey was made.
If the sheriff, at the time of the levy, had made a real survey of tho land, and had established any monuments, or marked the lines, this could have been given in evidence, and would have been, in our courts, controlling evidence. In such a case, Fugate’s corner, if not found in the survey, would be rejected.
But whether Fugate’s corner is to b e rejected or not, we do not, in the case now before the court, intend to decide; ^because, upon viewing the whole subject, we think a court of chancery is the more appropriate ti’ibunal to exercise the jurisdiction. There, *21 it is veiy clear, all the conflicting rights of the parties may be settled. There is another position taken in the charge which we consider erroneous. It is in extending the second line of the survey beyond its given length without an adequate cause. The reason which operated was, undoubtedly, to follow the description in the deed, so as to run the third line its designated course south, at right angles with the second, and from a point that would cause it to strike the south line twenty-seven rods, as required by the deed, cast of Fugate’s corner.
The objection to this construction is, that the monument, Fugate’s corner, which causes all the difficulty in the case, is here not permitted to exert its undoubted power, and control the course and distance of the single line directed toward it. Even if the Fugate corner is to remain, we decide that the third line must start from the end of the second, as described, and run diagonally across the tract, till it reaches, in a straight lino, the point required, twenty-seven rods east of Fugate’s corner. This construction, upon the trial, besides its violation of rule, greatly increased the size of the tract—too large before. For this reason, therefore, the judgment will bo reversed, and for the further error of rejecting the parol testimony, as above stated.
Judgment reversed.